Jasen, J.
(concurring). In June, 1968, petitioner, then 17 years old, passed á competitive civil service examination for the position of Police Trainee with the New York City Transit Authority Police Department (Authority). As a candidate for Police Trainee, he was advised that any misrepresentation in his application was ground for disqualification or dismissal, and that the “ employment of a police trainee may be terminated at any time, if his conduct, capacity or fitness is not satisfactory. ”
Prior to his appointment, petitioner was required to and did execute an “ Investigation of Applicant-Questionnaire ”, which required him to “ [l]ist all arrests and any police investigations not resulting in arrests (Include Juvenile Delinquency, Youth *290 fui Offender, Wayward Minor and Family Ct. Proceedings)".[1] At the time of his probationary appointment, petitioner was advised that he would be ‘‘ investigated thoroughly as to character and fitness ” before becoming a permanent member of the Transit Authority Police Department.
Subsequent investigation by the Authority indicated that petitioner made several false responses to the questionnaire. Specifically, the investigation revealed that in January, 1967, petitioner had been arrested in Queens County and charged with, criminally receiving stolen property (10 stolen automobile tires). This charge was dismissed, apparently so that he could be surrendered on a Dutchess County arrest warrant, which charged him with burglary third degree. Both charges arose out-of a single transaction involving a burglary resulting in the theft of 10 tires from a gasoline station in Dutchess County. With respect to the burglary, petitioner pleaded guilty to a reduced charge of malicious mischief and was adjudged a youthful offender.
Since petitioner did not disclose these prior incidents in his questionnaire, he was called to account before a superior officer, on September 18, 1969, on which occasion, confronted with the. afore-mentioned misrepresentations, he submitted his resignar.. tian from the department.
Shortly thereafter, petitioner commenced this article 78 proceeding, in the nature of mandamus, to compel his reinstatement, pleading that he was forced to execute his resignation under duress. In support of his claim of duress, petitioner alleged in his petition that on September 18, his superior, after informing him that he had failed to disclose his previous arrests-in his questionnaire, gave him a choice to resign immediately or be fired; that he was refused permission to call his attorney or *291 parents; and that he executed a resignation previously prepared by the Authority and handed to him.[2]
In its answer, the Authority denied his allegations, averring that petitioner voluntarily submitted his resignation after being confronted with the results of the investigation, and accordingly pleaded, as a defense, that a reviewable determination was not raised by his petition. Alternatively, the Authority contended that the false statements contained in the questionnaire justified his dismissal.
Special Term, on the basis of the papers before it and without holding a hearing, found that the Authority had procured petitioner’s resignation through duress and directed a trial of the factual question of whether petitioner had knowingly made any material misrepresentations to the Authority to secure his appointment as a Police Trainee. The ensuing trial resulted in an order directing petitioner’s reinstatement. On appeal, the Appellate Division unanimously affirmed this determination.
To begin with, as to the question of whether petitioner resigned under duress, it was not within the province of Special Term to accept the allegations of the petitioner at face value and find, vnthout a hearing, that his resignation “in no sense can be deemed voluntary ”, as the events leading to his resignation were sharply controverted in the answer filed by the Authority. (Cf. Matter of Durr v. Paragon Trading Corp., 270 N. Y. 464; Matter of Carthage Paper Makers v. Mutual Box Bd. Co., 2 A D 2d 175; Matter of Cravatts v. Klozo Fastener Corp., 282 App. Div. 1014; Matter of Schulman v. Dejonge & Co., 270 App. Div. 147; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶¶ 7803.10, 7803.14.)
Rather, the court should have directed a trial pursuant to CPLR 7804 (subd. [h]) to resolve the factual issue raised by the pleadings and affidavits concerning petitioner’s allegations of duress, and to make appropriate findings of fact before proceeding any further. It should be noted that a threat by an employer to do what the employer has the right to do does not constitute fraud or duress. (Bachorik v. Allied Control Co., 34 A D 2d 940, 942.) Under analogous circumstances involving the *292 involuntary resignation of a corporate officer, the Appellate Division has held: “ [The officer’s] testimony further demonstrates that the events surrounding his resignation did not contain the elements of wrongful conduct necessary to establish the claims of duress and undue influence. What plaintiff relies upon is the fact that he was told that he would be involuntarily discharged, without severance pay and that this might be disclosed to prospective employers. This can neither be considered a threat, nor false advice, since defendants had the right to discharge plaintiff, who was an employee at will, were not under any duty to continue his salary and were privileged to inform prospective employers of the circumstances surrounding the termination of his employment. A threat to do that which one has the legal right to do does not constitute duress or fraud.” (Bachorik v. Allied Control Co., 34 A D 2d, at p. 942).
Thus, a person’s resignation may not be considered to be obtained under duress unless the employer threatened to take action which it had no right to take. It follows that if the Authority did in fact make a threat to fire petitioner if he did not resign, this threat would not constitute duress unless the Authority had no right to discharge him. In this regard, it should be pointed out that the petitioner was a provisional employee, and as such, the Authority was entitled to discharge him without a hearing so long as its action was not arbitrary or capricious. (Matter of Albury v. New York City Civ. Serv. Comm., 32 A D 2d 895, affd. 27 N Y 2d 694.)
In sum, the proceeding should be remanded to the court at Special Term to decide the factual issue of whether or not the petitioner’s resignation was obtained by duress.
If Special Term finds that petitioner’s resignation was not obtained under duress, then his resignation stands and the proceeding should be dismissed. Under these circumstances, the proceeding would be treated as one to review the actions of the Authority in refusing to reinstate him. This is tantamount to review of discretionary action denying appointment to an eligible candidate (Matter of Doering v. Hinrichs, 289 N. Y. 29, 33; Matter of Baumet v. Lyons, 272 App. Div. 1095), and, as such, is not the concern of the courts (Matter of Turel v. Delaney, 287 N. Y. 15, 16; Matter of Delicati v. Schechter, 3 A D 2d 19, 21).
*293 On the other hand, if Special Term finds, after trial, that the Authority obtained petitioner’s resignation under duress, then he would be entitled tó reinstatement to his former position since the Authority would not have been justified in discharging the petitioner on the sole ground that his failure to divulge his youthful offender adjudication on his job application questionnaire constituted a willful misrepresentation.[3] It was not a willful misrepresentation, the evidence discloses, for the reason that the Justice of the Peace presiding at the youthful offender adjudication advised the petitioner that he was not required to divulge the adjudication op employipent applications.
H
This does not meán, however, that the Authority is required to retain the petitioner in the position of Police Trainee, in the event Special Term orders his reinstatement after the hear-, ing upon remand of this proceeding, if the Authority thereafter determines that his integrity, judgment or general fitness falls short of the standards set by it for the position.
At Special Term, the court expressed the view that a public employer, such as the Authority, cannot consider an applicant’s youthful offender adjudications, or the illegal and immoral acts which support such adjudications, in evaluating his fitness for public employment. In .support of this view, the court relied on former section 913-n of the Code of Criminal Procedure.[4]
Section 913-n, referring to youthful offenders, provided that: “No determination made under the provisions of this title shall operate as a disqualification of any youth subsequently to hold public office, public employment, or as a forfeiture of any right or privilege or to receive any license granted by public authority ”. (Emphasis added.)
The language of the statute is quite specific. It states that one is not, ipso facto, disqualified from public employment by reason of his youthful offender adjudication. However, the lan *294 guage of the statute does not expunge one’s misconduct so as to prevent the employer from considering the illegal and immoral acts which underlie the youthful offender adjudication. Nor does it permit the youth to conceal mere mention of his youthful offender adjudications or arrests on employment applications. Public policy, in our opinion, rules out such a construction. It would be unreasonable to interpret section 913-n as foreclosing a governmental agency, such as the Authority, from inquiring into an applicant’s prior misconduct in evaluating his fitness for employment as a police officer. The public interest requires that law enforcement officers be of impeccable character and integrity, and in order to properly determine an applicant’s character and integrity, the department should know óf any prior misconduct. This rule should apply not only to law enforcment officers, but, likewise, to other sensitive public positions. For example, a sexual deviate receiving youthful offender status for sexually molesting children would hardly be the one to hire as an attendant at a State school for children. Yet, there is no way to prevent the hiring of one so unfit for.such a sensitive position if the employer is barred from all inquiry into the illegal and immoral acts underlying a youthful offender adjudication. Certainly, the Legislature, had it so intended to bar all such inquiry, would have changed the language of section 913-n so as to explicitly state that a youthful offender adjudicature barred employers from making any inquiry into the misconduct which resulted in the.adjudication, and that the applicant could conceal his adjudication on employment applications. Indeed, to our knowledge, such a provision has been enacted by only one State[5]— California ■ — which has. a statute providing for the expungement of a youth conviction after satisfactory completion of the sentence imposed, and permits the youth to apply for a court order sealing the conviction records which has the effect that “ such conviction, arrest, or other proceeding shall be deemed not to have occurred, and the petitioner may answer accordingly any question relating to their *295 occurrence.” (Cal. Pen. Code, § 1203.45, subd. [a].) Instead, the New York Legislature has provided that the youthful offender adjudication shall not result in automatic disqualification for public employment but has not gone so far as to expunge the adjudication, and the underlying iñisconduct and arrests which support it.
This, in our opinion, is the sounder view, as the public employer has a legitimate concern in knowing of prior misconduct of prospective employees in order to intelligently pass on their character and integrity, as well as their fitness for the position they seek. This does not mean that an applicant adjudicated a youthful offender would be barred from public employment opportunities — but, to the contrary, the youth is eligible for public employment and the employer must reach its determination as to his employability based upon his over-all fitness and qualifications for the position sought by him. In reaching its decision as to the employability of the applicant, the employer may consider the misconduct underlying prior youthful offender adjudications, but only to the extent that such misconduct is relevant to his fitness and qualifications for the position sought. We are aware of the employment problems which may be faced by persons adjudicated as youthful offenders (see, e.g., Note, Employment of Former Criminals, 55 Cornell L. R. 306 [1969]), but these problems may be minimized by generous treatment of former offenders by public employers, and by judicial review of their employment decisions to ensure that such offenders are not the victims of discrimination in public employment.
Indeed, this is the view advocated by the President’s Commission on Law Enforcement and Administration of Justice, which wrote in its task force report concerning public employment of former offenders: ‘ ‘ Although certain offenses are clearly related to fitness to hold such positions, it is rarely necessary to provide for automatic disqualification in order to protect society. Instead, where there is someone with authority to appoint or remove, or where the public has such authority through its power to elect, it seems generally preferable to rely on their judgment. The relevance of particular convictions or terms of imprisonment to fitness for the particular position can then be considered * * * Some authorities have proposed establishment of an annulment procedure, whereby the offender’s records would *296 be expunged or sealed, and he would be entitled to say he had never been convicted, or, alternatively, private individuals and official agencies would be prohibited from asking about such convictions * * * Logically, annulment procedures seem unnecessary to deal with problems of State-imposed disabilities and disqualifications. The convicting jurisdiction can accomplish the same result by simply not depriving the offender of the rights or by restoring them in some appropriate fashion. Actually to expunge records removes all discretion from those legitimately concerned with previous convictions. Thus, while it may not be justified to deprive convicted felons of the right to hold public office, those in the position of electing or appointing should presumably know of such convictions. And it would be nearly impossible to determine in one annulment procedure that particular convictions had no relevance for any future decision. In addition to these practical problems, some would question the propriety of government telling an offender that he has a right to deny a prior conviction, and of removing from private individuals or other jurisdictions the right to consider for themselves the relevance of a prior criminal record.” (President’s Commission on Law Enforcement and Administration of Justice, 1967 Task Force Report: Corrections, ch. 5, The Legal Status of Convicted Persons, pp. 90, 92.)
Even the California expungement statute has been applied in a practical fashion to permit inquiry into the misconduct underlying the conviction where the public interest required. Thus, in Taylor v. Macy (252 F. Supp. 1021 [S. D. Cal., 1966]), the petitioner was discharged from the Federal civil service because of two acts of misconduct which supported two convictions which were expunged pursuant to section 1203.4 of the California Penal Code. The Federal District Court upheld petitioner’s discharge, stating: “while the State of California has forgiven petitioner to the extent of releasing certain penalties and disabilities, the acts continue to exist and it would be absurd to find that the executive authorities were arbitrary and capricious in considering these expunged convictions in' assessing the character of the petitioner in proceedings for the removal of a civil service employee, nor would it be arbitrary and capricious to, denominate the acts as major offenses of misconduct ”. (252 F. Supp., at p. 1023.) Similarly, the Cali *297 fornia Supreme Court has held that the California expungement statutes did not prevent disbarment of an attorney for misconduct underlying an expunged conviction (In re Phillips, 17 Cal. 2d 55), or revocation of the medical license of a doctor for unprofessional conduct by reason of an expunged conviction of unlawfully selling narcotics. (Meyer v. Board of Med. Examiners, 34 Cal. 2d 62.)
Indeed, we recently held in People v. Vidal (26 NY 2d 249) that notwithstanding section 913-n, it was proper and relevant to cross-examine a witness in a criminal trial as to the underlying and immoral acts which support a prior youthful offender adjudication of the witness. (See, also, People v. Hurst, 10 N Y 2d 939, affg. 13 A D 2d 821.)
The reasoning of the court in Matter of Tucker v. Adams (141 N. Y. S. 2d 235, 236) is valid: “ Here, moreover, petitioner, was found guilty of a wrongful act, the elements of which as they bore on the question of his fitness to be a patrolman were within the cognizable discretion of the Commissioner, despite the statutory mandate that it could not'be urged as a conclusive bar to his appointment.”
While it is true that section 720.35 of the Criminal Procedure Law provides that the official records of a youthful offender adjudication are confidential and may not be made available to a public or private employer unless specifically permitted by statute or upon specific authorization of the court, the statute, by its express terms, is restricted to the public records of the adjudication. Section 720.35 does not prevent the employer from requiring disclosure of youthful offender adjudication on employment applications, or of commencing its own independent investigation into the applicant’s fitness and qualifications, which investigation could include misconduct and arrests underlying the applicant’s youthful offender adjudication.
Accordingly, the order appealed from should be modified and the proceeding remitted to Special Term for trial on the issue of whether petitioner submitted his resignation under duress.
Judges Burke, Bergan anc Gibson concur with Chief Judge Fuld; Judge Jasen concurs in a separate opinion in which Judges Sgileppi and Bbeitel concur.
*298 Order modified, without costs, and the matter remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein, and, as so modified, affirmed.

. The questionnaire also asked if the applicant had “any knowledge of information, in addition to that specifically called for in the preceding questions which is or may be relevant, directly or indirectly, in connection with an investigation of your eligibility or fitness for the position applied for; including but not limited to knowledge or information concerning your character * * * habits, employment, education * * * criminal, record * * * or otherwise?”

. In a supplementary affidavit, petitioner also alleged that his superior told him that if he did not resign immediately, he would be placed under arrest.

. See, e.g., Code of Fed. Reg., tit. 5, § 731.201 (subd. [c]) which provides that Federal probationary employees may be disqualified by intentional false statements, deception, or fraud in examination or appointment.

. Former section 913-n, in effect at the time of petitioner’s resignation, was carried over into the Criminal Procedure Law, effective September 1, 1971, without substantial change as CPL 720.35,

. New Jersey has a limited expungement statute for minor offenses (N. J. Rev. Stat., § 2A: 164-28), which does not have the effect of a full pardon of the underlying misconduct. (Opn. N. J. Atty. Gen., Feb. 26, 1953, No. 5.) Former section 176.510 of the Nevada Revised Statutes provided for vacation or. annulment of sentence, hut did not provide that the defendant may deny the conviction or the misconduct which underlies the conviction.